**Case No. 22-12327-HH**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT
---

**EVRETT JAMES and VERONICA ELLERBE,**
*Plaintiffs-Appellants*

v.

**WESTIN ST. JOHN HOTEL COMPANY, INC.,**
*Defendant-Appellee*

---

On Appeal from the United States District Court
For the Middle District of Florida
Case No. 6:20-cv-00429-WWB-GJK

---

**RESPONSE BRIEF OF APPELLEE**
**WESTIN ST. JOHN HOTEL COMPANY, INC.**

---

Joyce Ackerbaum Cox, Esq.
Florida Bar No. 0090451
E-Mail: jacox@bakerlaw.com
Erin M. Sales, Esq.
Florida Bar No. 119799
E-mail: esales@bakerlaw.com
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
***Counsel for Defendant-Appellee Westin St.***
***John Hotel Company, Inc.***

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT BY COUNSEL FOR DEFENDANT-APPELLEE WESTIN ST. JOHN HOTEL COMPANY, INC.**

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, Defendant-Appellee, WESTIN ST. JOHN HOTEL COMPANY, INC. ("Appellee") hereby files its Certificate of Interested Persons and Corporate Disclosure Statement:

1.  Ackerbaum Cox, Esq., Joyce – Attorney for Defendant-Appellee

2.  Baker & Hostetler LLP – Law Firm for Defendant-Appellee

3.  Bowen, Esq., Nailah – Attorney for Defendant-Appellee

4.  Ellerbe, Veronica – Plaintiff-Appellant

5.  Georges-Pierre, Esq., Anthony – Former Attorney for Plaintiffs-Appellants

6.  James, Evrett – Plaintiff-Appellant

7.  Marriott Vacations Worldwide Corp. (parent corporation of Defendant-Appellee)

8.  Remer, Esq., James – Former Attorney for Plaintiffs-Appellants

9.  Remer & Georges-Pierre, PLLC – Former Law Firm for Plaintiffs-Appellants

10. Sales, Esq., Erin – Attorney for Defendant-Appellee

11. Westin St. John Hotel Company, Inc. – Defendant-Appellee

## STATEMENT REGARDING ORAL ARGUMENT

Appellee does not request that the Court hear oral argument in this matter. Appellee does not believe that oral argument will be of assistance to the Court in understanding the disputes at issue on this appeal, as the issues are not novel.

# <u>TABLE OF CONTENTS</u>

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT BY COUNSEL FOR DEFENDANT-
APPELLEE WESTIN ST. JOHN HOTEL COMPANY, INC. .......... C-1 of 1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CONTENTS.......................................................................... ii

TABLE OF AUTHORITIES ................................................................v

STATEMENT OF SUBJECT-MATTER AND APPELLATE
JURISDICTION ...........................................................................1

STATEMENT OF THE ISSUES.........................................................1

STATEMENT OF THE CASE.............................................................2

    I.    Plaintiffs Worked For Westin As Sales Executives And
        Competed For A Spot On The 096 Line. ..................................2

    II.    James Was The Only Sales Executive Regularly Permitted To
        Take Tours Front-To-Back, Until His Privilege Was Revoked
        Due To Misrepresentations. ...............................................5

    III.    Westin Promptly Investigated And Corrected Any
        Discrepancies On Sales Executives' PMP Reports.............................5

    IV.    James' Insubordination And Misconduct Led To His
        Termination. ...................................................................7

    V.    Ellerbe Voluntarily Resigned During The COVID-19
        Pandemic. ....................................................................7

    VI.    Plaintiffs Each Filed Two Charges Of Discrimination, Followed
        By The Instant Litigation. ..................................................8

STANDARD OF REVIEW ................................................................9

SUMMARY OF THE ARGUMENT ......................................................9

ARGUMENT .................................................................................10

I.   Plaintiffs' Brief Fails To Comply With The Federal Rules Of Appellate Procedure And This Court's Local Rules, Thereby Failing To Demonstrate Their Entitlement To Relief. .......................10

     A.   Plaintiffs Fail to Support Their Assertions With Citations to the Record on Appeal. ..........................................................10

     B.   Plaintiffs Have Abandoned Their Arguments Because They Failed to Present Appropriate Arguments As to Why They Are Entitled to Relief. .............................................11

II.   The District Court Correctly Disregarded Plaintiffs' Arguments Pertaining To An Alleged Hostile Work Environment Because Plaintiffs Did Not Bring A Hostile Work Environment/Harassment Claim. .......................................................12

     A.   A Hostile Work Environment Claim Is a Discrete Claim, Wholly Separate From the Claims That Plaintiffs Brought in the District Court. ....................................................12

     B.   Plaintiffs' Discrimination Claims Should Not Be Liberally Construed As Hostile Work Environment Claims Because Plaintiffs Were Represented by Counsel in District Court. ....................................................................17

III.   The District Court Properly Found That Plaintiffs Failed To Demonstrate Discrimination. ............................................................18

     A.   Plaintiffs Failed to Establish Discrimination Under the *McDonnell Douglas* Burden Shifting Analysis. .......................18

     B.   Plaintiffs Failed to Demonstrate a Convincing Mosaic of Discrimination.............................................................................23

IV.   The District Court Properly Granted Summary Judgment In Favor Of Westin On Plaintiffs' Retaliation Claims. ...........................26

     A.   Plaintiffs Failed to Respond To Westin's Arguments Regarding Ellerbe's Retaliation Claims, and Failed To Establish That An Adverse Employment Action Was Taken Against Ellerbe..............................................................26

**B.**    James' Response Failed to Establish the Pretext Required to Maintain a Retaliation Claim. ...............................................29

V.    The District Court Correctly Disregarded Plaintiffs' Arguments Pertaining To An Alleged Failure To Promote And Alleged Discriminatory Wages. ..........................................................................30

**A.**    Plaintiffs Did Not Bring a Failure to Promote or a Discriminatory Wages Claim. ...................................................30

**B.**    Plaintiffs May Not Maintain a Failure to Promote Claim, Nor May James Maintain a Discriminatory Wage Claim Under Title VII Because They Failed to Exhaust Their Administrative Remedies. ........................................................32

CONCLUSION ............................................................................................34

CERTIFICATE OF COMPLIANCE ......................................................36

CERTIFICATE OF SERVICE ................................................................37

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alba v. Montford*,
517, F.3d 1249, 1252 (11th Cir. 2008) ............................................................33

*Albra v. Advan, Inc.*,
490 F.3d 826 (11th Cir. 2007) ...........................................................................11

*Alford v. Consol. Gov't of Columbus*,
438 F. App'x 837 (11th Cir. 2011), *cert. denied*, 565 U.S. 1185
(2012)..................................................................................................................17

*\*Anthony v. Coffee Cnty.*,
579 F. App'x 760 (11th Cir. 2014) ......................................................16, 17, 31

*Bonner v. City of Prichard, Ala.*,
661 F.2d 1206 (11th Cir. 1981) .........................................................................11

*\*Brown v. Snow*,
440 F.3d 1259 (11th Cir. 2006) ...........................................14, 15, 28, 31

*Cont'l Tech. Servs. v. Rockwell Int'l Corp.*,
927 F.2d 1198 (11th Cir. 1991) .........................................................................33

*Cooler v. Layne Christensen Co.*,
710 F. App'x 842 (11th Cir. 2017)....................................................................23

*Coon v. Ga. Pac. Corp.*,
829 F.2d 1563 (11th Cir. 1987) .........................................................................14

*Cordoba v. Dillard's Inc.*,
419 F.3d 1169 (11th Cir. 2005) .........................................................................20

*Crawford v. Babbitt*,
186 F.3d 1322 (11th Cir. 1999) .................................................................28, 32

*Crawford v. Carroll*,
529 F.3d 961 (11th Cir. 2008) ...........................................................................19

*Davis v. Town of Lake Park, Fla.*,
    245 F.3d 1232 (11th Cir. 2001) ........................................................26

*Desravines v. Orange Cnty. Sheriff's Office*,
    520 F. App'x 946 (11th Cir. 2013) ...................................................16

*\*Draughon v. Comm'r, Soc. Sec. Admin.*,
    706 F. App'x 517 (11th Cir. 2017) ...................................................11

*Edwards v. Prime, Inc.*,
    602 F.3d 1276 (11th Cir. 2010) ........................................................13

*Floyd v. Home Depot U.S.A., Inc.*,
    274 F. App'x 763, 765 (11th Cir. 2008).......................................19, 27

*Gilmour v. Gates, McDonald & Co.*,
    382 F.3d 1312 (11th Cir. 2004) ........................................................14

*GJR Invs., Inc. v. Cnty. of Escambia, Fla.*,
    132 F.3d 1359 (11th Cir. 1998) ........................................................33

*\*Gogel v. Kia Motors Mfg. of Ga., Inc.*,
    967 F.3d 1121 (11th Cir. 2020) ..................................................22, 29

*Gregory v. Ga. Dep't of Human Res.*,
    355 F.3d 1277 (11th Cir. 2004) ........................................................32

*Hall v. DeKalb Cnty. Gov't*,
    503 F. App'x 781 (11th Cir. 2013) ...................................................16

*Hall v. Great-West Healthcare*,
    276 F. App'x 923 (11th Cir. 2008) ...................................................33

*Harrigan v. Metro Dade Police Dep't Station #4*,
    977 F.3d 1185 (11th Cir. 2020) ........................................................17

*Hedberg v. Ind. Bell Tel. Co.*,
    47 F.3d 928 (7th Cir. 1995) .............................................................21

*Holland v. Gee*,
    677 F.3d 1047 (11th Cir. 2012) ........................................................26

*Holley v. Ga. Dep't of Corr.*,
   845 F. App'x 886 (11th Cir. 2021) .................................................................24

*Hurlbert v. St. Mary's Health Care Sys., Inc.*,
   439 F.3d 1286 (11th Cir. 2006) ...............................................................29

*Inter'l Aircraft Recovery, L.L.C. v. Unidentified, Wrecked, &*
   *Abandoned Aircraft*,
   373 F.3d 1147 (11th Cir. 2004) ...............................................................13

*\*Iraola & Cia, S.A. v. Kimberly-Clark Corp.*,
   325 F.3d 1274 (11th Cir. 2003) ...........................................................16, 31

*Johnson v. Booker T. Washington Broad. Serv., Inc.*,
   234 F.3d 501 (11th Cir. 2000) ................................................................16

*\*Kinard v. Gallina*,
   714 F. App'x 974 (11th Cir. 2018) ..........................................................12

*\*Lewis v. Blue Bird Corp.*,
   835 F. App'x 526 (11th Cir. 2020) ..........................................................22

*Lewis v. City of Union City*,
   918 F.3d 1213 (11th Cir. 2019) ...............................................................18

*Matthews v. City of Mobile, Ala.*,
   702 F. App'x 960 (11th Cir. 2017) ..........................................................19

*McCone v. Pitney Bowes, Inc.*,
   582 F. App'x 798 (11th Cir. 2014) ..........................................................26

*\*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973).....................................................................1, 18, 29

*Miller v. King*,
   449 F.3d 1149, 1150 n.1 (11th Cir. 2006) ...............................................16

*Monaghan v. Worldpay US, Inc.*,
   955 F.3d 855 (11th Cir. 2020) ................................................................26

*\*Moreland-Richardson v. City of Snellville*,
   No. 19-14228, 2021 WL 4452523 (11th Cir. Sept. 29, 2021).....................18, 27

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002)......................................................................30

*\*O'Kelley v. Craig*,
    781 F. App'x 888 (11th Cir. 2019) ...........................................16, 31

*Pennington v. City of Huntsville*,
    261 F.3d 1262 (11th Cir. 2001) .................................................26

*Powers v. Avondale Baptist Church*,
    393 F. App'x 656 (11th Cir. 2010) ............................................33

*Ray v. McCullough Payne & Haan, LLC*,
    838 F.3d 1107 (11th Cir. 2016) .................................................11

*Ross v. Jefferson Cnty. Dep't of Health*,
    701 F.3d 655 (11th Cir. 2012) ....................................................9

*Shields v. Fort James Corp.*,
    305 F.3d 1280, 1282 (11th Cir. 2002) .......................................13

*Smelter v. S. Home Care Servs. Inc.*,
    904 F.3d 1276 (11th Cir. 2018) .............................................15, 16

*Smith v. Lockheed-Martin Corp.*,
    644 F.3d 1321 (11th Cir. 2011) .............................................23, 25

*Smith v. PAPP Clinic, P.A.*,
    808 F.2d 1449 (11th Cir. 1987) .................................................23

*\*Stuart v. Jefferson Cnty. Dep't of Human Res.*,
    152 F. App'x 798 (11th Cir. 2005)....................................32, 33, 34

*Sullivan v. Nat'l R.R. Passenger Corp.*,
    170 F.3d 1056 (11th Cir. 1999) .................................................29

*Thomas v. Cooper Lighting, Inc.*,
    506 F.3d 1361 (11th Cir. 2007) ...............................................9, 33

*Timson v. Sampson*,
    518 F.3d 870 (11th Cir. 2008) ..................................................33

*Van T. Junkins & Assocs. v. U.S. Indus., Inc.*,
736 F.2d 656 (11th Cir. 1984) ............................................................28

*Walker v. St. Joseph's/Candler Health Sys., Inc.*,
506 F. App'x 886 (11th Cir. 2013)......................................................29

*Walton v. Johnson & Johnson Servs., Inc.*,
347 F.3d 1272 (11th Cir. 2003) ..........................................................13

*\*Wright v. Hanna Steel Corp.*,
270 F.3d 1336 (11th Cir. 2001) ..........................................................13

**Statutes**

28 U.S.C. § 1291 ......................................................................................1

42 U.S.C. § 1985 ....................................................................................16

42 U.S.C. § 2000e-5(b) .....................................................................28, 32

42 U.S.C. § 1981 ..................................................................1, 8, 12, 13, 28

42 U.S.C. § 2000e-2........................................ 1, 2, 8, 12, 13, 16, 28, 32

**Rules**

11th Cir. R. 28-1(i)................................................................................11

11th Cir. R. 28-5 ...................................................................................11

Fed. R. Civ. P. 56(a)...............................................................................9

Federal Rule of Civil Procedure 8(a) ....................................................14

Federal Rule of Civil Procedure 8(a)(2) ...............................................30

Federal Rules of Appellate Procedure Rule 28(a)(8)(A)........................10

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

Defendant-Appellee, WESTIN ST. JOHN HOTEL COMPANY, INC. ("Westin") states that this is an appeal from a final order. As such, 28 U.S.C. § 1291 provides this Court with jurisdiction to hear this appeal. Underlying subject-matter jurisdiction in this case rests on Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

## STATEMENT OF THE ISSUES

1.    Whether the District Court correctly disregarded the arguments of Plaintiffs-Appellants, EVRETT JAMES ("James") and VERONICA ELLERBE ("Ellerbe") (collectively "Plaintiffs"), pertaining to an alleged hostile work environment where Plaintiffs never pleaded a hostile work environment/harassment claim and otherwise failed to establish such a claim.

2.    Whether the District Court correctly granted summary judgment in favor of Westin on Plaintiffs' discrimination claims where Plaintiff failed to establish discrimination under either the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), or by demonstrating a convincing mosaic of discrimination.

3.    Whether the District Court correctly granted summary judgment in favor of Westin on Plaintiffs' retaliation claims where Plaintiffs failed to respond to Westin's arguments regarding Ellerbe's retaliation claims, Ellerbe otherwise failed

1

to establish that an adverse employment action occurred, and James failed to establish pretext.

4.     Whether the District Court correctly disregarded Plaintiffs' arguments pertaining to an alleged failure to promote where Plaintiffs never pleaded a failure to promote claim and Plaintiffs otherwise failed to administratively exhaust a failure to promote claim under Title VII.

5.     Whether the District Court correctly disregarded Plaintiffs' arguments pertaining to alleged discriminatory wages where Plaintiffs never pleaded a discriminatory wages claim and James otherwise failed to administratively exhaust a discriminatory wages claim under Title VII.

## STATEMENT OF THE CASE

**I.     Plaintiffs Worked For Westin As Sales Executives And Competed For A Spot On The 096 Line.**

Plaintiffs, who are both Black, previously worked for Westin as sales executives in the Sales and Marketing Department at the Westin St. John (the "Property"). Doc. 18 at ¶ 4; Doc. 36-3 at 32:14–18, 33:18–22; Doc. 36-1 at 25:22–26:12. Sales executives are tasked with leading a number of different types of sales presentations – referred to as "lines" – based upon the nature of guest that is the subject of the presentation. These presentations are referred to as "tours." Doc. 36-3 at 45:17–46:3. Of particular importance to the instant litigation is a tour type referred to as the "Owner Encore Line," also known as the "096 Line." 096 Line guests are

2

those who have been provided with a deeply discounted vacation package in exchange for their agreement to participate in a sales presentation at the Property. Doc. 36-3 at 46:9–50:4. Every two weeks, sales executives are "ranked" and assigned to these various tours based on their prior performance, generally using a rolling 90-day lookback. Doc. 36-2 at ¶ 7. Only two individuals were eligible to take 096 Line tours during each two-week rotation period. *Id.* at ¶ 9.

After the Property reopened following Hurricane Irma in December of 2018, management did not have sales data for a 90-day lookback period on which to base tours. *Id.* at ¶ 8. The head of the Sales and Marketing Department at the time, Rebecca Sosa ("Sosa"), therefore decided to rank James first on the 096 Line. *Id.* at ¶ 8. Eventually, however, the Property had been reopened long enough to collect sales data to re-rank the sales executives. *Id.* at ¶ 9. At this point, a sales executive's opportunity to work on the 096 Line was determined based on his or her blended volume per guest ("VPG")[1] for all of the various Owner Lines – including the 096 Line. Doc. 36-3 at 57:21.

Several months later, Sosa decided to change the metrics used to determine the 096 Line rotation assignments. Doc. 36-2 at ¶ 10; Doc. 45 at 8. Instead of basing the 096 Line rotation on total Owner Line VPG (including 096 Line VPG), Sosa

---

[1] VPG is determined by dividing one's total sales volume for a particular type of tour by the number of that type of tours the associate led in a given period. Doc. 36-2 at ¶ 7.

decided to eliminate each sales executive's 096 Line VPG from the calculation. Doc. 36-2 at ¶ 10; Doc. 36-3 at 61:8–16. The logic behind this change was twofold. First, Westin's quota for non-096 Owner Line sales was roughly $14-17 million, in comparison to $3-4 million for 096 Owner Line Sales. Doc. 36-2 at ¶ 10. Sosa wanted to incentivize sales executives to focus on pushing non-096 Owner Line tours in order to meet Westin's higher Owner Line quota. *Id.* Second, Sosa wanted to "shake things up" and give all of the sales executives a greater opportunity for a chance on the two-person 096 Line rotation in the hope that the change would incentivize all of the sales executives to work harder. *Id.*; Doc. 36-4 at 17:18–20. When Sosa implemented this policy change, she communicated it to all sales executives during a morning team meeting in or around April of 2019. Doc. 36-2 at ¶ 11.

For the first few months after this policy change was implemented, James remained on the 096 Line rotation. *Id.* at ¶ 12. In August of 2019, however, another sales executive had an exceptional performance month. *Id.* at ¶ 14. Immediately thereafter, in September of 2019, Plaintiffs took a multi-week vacation to Saudi Arabia. *Id.* at ¶¶ 14–15; Doc. 36-3 at 199:8–21. As a result of these two events, James fell from the 096 Line in September of 2019. Doc. 36-2 at ¶ 15. James then complained for the first time about the policy change. Doc. 36-3 at 67:5–68:4.

Regardless, by December of 2019, James' sales performance had secured his place back on the 096 Line. Doc. 36-2 at ¶ 15.

## II.    James Was The Only Sales Executive Regularly Permitted To Take Tours Front-To-Back, Until His Privilege Was Revoked Due To Misrepresentations.

In light of James' stellar sales performance, he was the only sales executive that Westin regularly permitted to take tours "front-to back," meaning that James was allowed to make the initial sales presentation to a guest and thereafter also present pricing information. *Id.* at ¶ 16; Doc. 36-3 at 144:6–13; Doc. 36-4 at 30:9. Other sales executives were occasionally permitted to do so due to staffing issues, but those occurrences were one-off and were not regular. Doc. 36-2 at ¶ 16. In November of 2019, however, James received a verbal warning after making misrepresentations to a touring guest and later, in direct violation of Sosa's instructions, calling the same guest to discuss the guest's concerns. *Id.* at ¶ 17; Doc. 36-3 at 40:20–25, 149:22–150:5, Ex. 19. As a result of these misrepresentations (which the prohibition on front-to-back touring was designed to avoid in the first place) and insubordination, Westin revoked James' front-to-back privilege. Doc. 36-2 at ¶ 16; Doc. 36-3 at Ex. 19, Doc. 36-4 at 30:24–31:19.

## III.   Westin Promptly Investigated And Corrected Any Discrepancies On Sales Executives' PMP Reports.

On a monthly, bi-monthly, and quarterly basis, sales executives receive performance management metrics reports ("PMP reports") outlining important

performance-indicative data for the applicable time period, such as the number of tours each sales executive took, his or her total sales volume, and his or her VPG. Doc. 36-3 at 64:7–21, 74:10–18, 77:11–22, Ex. 10. Neither Sosa nor any of the sales managers based at the Property play any role in generating the PMP reports. Doc. 36-2 at ¶ 19.

PMP reports are not immune from human error, and sales executives (not just Plaintiffs) periodically notice numerical errors on the reports. *Id.* at ¶ 20; Doc. 36-3 at 95:13–96:3. Whenever a sales executive brings such a discrepancy to Sosa's attention, she investigates the matter and, if necessary, makes sure the error is corrected on the reports themselves and in Westin's internal system. Doc. 36-4 at 49:18– 50:5. Every sales executive, regardless of race, has reported these types of discrepancies to Sosa. Doc. 36-2 at ¶ 20. Any discrepancies reported by Plaintiffs were corrected. Doc. 36-1 at Ex. 9 (DEF 309); Doc. 36-2 at ¶ 21; Doc. 36-3 at 86:21– 88:25.[2] Plaintiffs could not point to any instances where their numbers remained incorrect, or provide any evidence that such errors were intentionally made (or made

---

[2] Due to one such error, Ellerbe's VPG for the applicable review period fell below the required 80%. Doc. 36-2 at ¶ 21. As a result, Westin presented her with a performance counseling document. *Id.* However, as soon as Westin was made aware of the reporting error, it promptly revoked the performance counseling document and Ellerbe was ultimately never disciplined or suffered any adverse action arising from the erroneous PMP report. Doc. 36-1 at 80:11–25; Doc. 36-2 at ¶ 21.

for a discriminatory reason). Doc. 36-1 at 98:14–106:16, 175:11–196:6; Doc. 36-3 at 82:21–102:1.

## IV.   James' Insubordination And Misconduct Led To His Termination.

In January of 2020, James was observed offering a "first day incentive" in the form of Marriott Bonvoy points to a guest, "Mr. Hale," who had not made a purchase on his initial tour but had returned the next day requesting the same incentive. Doc. 36-2 at ¶ 23. James' conduct was contrary to Westin's policy, under which sales executives are prevented from offering first day incentives to returning guests. *Id.* When Mr. Hale returned the next day, James left another guest mid-tour to assist Mr. Hale and, instead of asking a sales manager to present the applicable pricing information to Mr. Hale, as was required, he asked Ellerbe to do so. *Id.* at ¶ 24. In Sosa's view, this behavior was evidence of James' continued penchant for making misrepresentations to guests to secure a sale and willfully refusing to follow her directions. *Id.* at ¶ 25. Sosa therefore decided to terminate James' employment in late January of 2020. *Id.* at ¶ 26.

## V.   Ellerbe Voluntarily Resigned During The COVID-19 Pandemic.

Westin furloughed all of its sales executives, including Ellerbe, in April of 2020 amidst the COVID-19 pandemic. Doc. 36-1 at 156:4–157:11. As business conditions improved, Westin reached out to Ellerbe in September of 2020 to let her know that she was being recalled to work, effective September 15, 2020. *Id.* at

157:16–158:25. Rather than return on September 15, 2020, however, Ellerbe asked to take bereavement leave due to a death in the family. Westin requested further information to determine whether, consistent with its human resources policies, Ellerbe qualified for bereavement leave. Doc. 36-1 at Ex. 27. Ellerbe responded to this request on September 22, 2020, advising that "due to the unforeseen circumstances [she] w[ould] not be returning to St. John and w[ould] be resigning from [her] position[.]" *Id.* at Ex. 28. During her deposition, Ellerbe unequivocally testified that the unforeseen circumstance referenced in her e-mail was "COVID." *Id.* at 159:5–16.

## VI.    Plaintiffs Each Filed Two Charges Of Discrimination, Followed By The Instant Litigation.

Plaintiffs both filed two charges of discrimination, limited in scope as discussed further below. Doc. 36-1 at Ex. 21, Ex. 23; Doc. 36-3 at Ex. 16–17. Thereafter, Plaintiffs filed their original Complaint in the United States District Court for the Middle District of Florida, followed by an Amended Complaint (the "Complaint"), asserting four claims against Westin: (1) Race discrimination in violation of Title VII; (2) Race discrimination in violation of § 1981; (3) Retaliation in violation of Title VII; and (4) Retaliation in violation of § 1981. Doc. 1; Doc. 18. Following discovery, Westin filed a Motion for Summary Judgment (the "Motion") on all four claims. Doc. 36. In their Response in Opposition to Westin's Motion for Summary Judgment (the "Response"), Plaintiffs raised—for the first time—various

8

new claims and arguments, as discussed in greater detail below. Doc. 45. The District Court subsequently granted summary judgment in favor of Westin on all claims. Doc. 56.

## STANDARD OF REVIEW

Appellate courts "review a grant of summary judgment de novo." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). Summary judgment is appropriate "when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Ross v. Jefferson Cnty. Dep't of Health*, 701 F.3d 655, 658 (11th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).

## SUMMARY OF THE ARGUMENT

Plaintiffs' *pro se* status does not excuse the myriad of problems with their appeal. From the outset of Plaintiffs' Opening Brief ("Brief"), it is difficult to decipher the specific issues Plaintiffs seek to put before this Court on appeal. Plaintiffs' Brief contains ample recitation of alleged facts yet fails to include a single record citation to support such alleged facts. Additionally, it contains no application of relevant case law to the specific facts and issues in this case. Further, Plaintiffs' Brief appears to present a number of claims and arguments that were never presented to the District Court.

Regardless, viewing Plaintiffs' Brief with a very wide lens suggests that they take issue with the District Court's decision not to consider their arguments

pertaining to (a) an alleged hostile work environment/harassment, (b) an alleged failure to promote, and (c) alleged discriminatory wages. They also appear to challenge the District Court's granting of summary judgment in favor of Westin on Plaintiffs' discrimination and retaliation claims.

In granting Westin's Motion, the District Court correctly disregarded Plaintiffs' references to an alleged hostile work environment, discriminatory wages, and failure to promote, properly refused to permit Plaintiffs to proceed to trial on harassment claims, and correctly granted summary judgment in favor of Westin on Plaintiffs' discrimination and retaliation claims. Additionally, Plaintiffs have failed to properly support their arguments on appeal. This Court should therefore affirm the District Court's entry of summary judgment.

## ARGUMENT

**I.    Plaintiffs' Brief Fails To Comply With The Federal Rules Of Appellate Procedure And This Court's Local Rules, Thereby Failing To Demonstrate Their Entitlement To Relief.**

### A.    Plaintiffs Fail to Support Their Assertions With Citations to the Record on Appeal.

As an initial matter, under Rule 28(a)(8)(A) of the Federal Rules of Appellate Procedure, an appellant's brief "must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." This Court's Local Rules confirm that in all sections of the brief, "every assertion regarding matter in the record shall be supported by a

10

reference to the record, as described in 11th Cir. R. 28-5." 11th Cir. R. 28-1(i). *Pro se* litigants are required to comply with procedural rules, including record citations. *Draughon v. Comm'r, Soc. Sec. Admin.*, 706 F. App'x 517, 519 (11th Cir. 2017) (citing *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007)).

Plaintiffs' Brief wholly fails to comply with these rules. Instead, Plaintiffs' Brief presents as a stream of consciousness without any citations to the record. This renders it nearly impossible to locate such facts within the record, confirm whether such factual assertions are even contained within the record, and verify Plaintiffs' factual assertions. Plaintiffs have failed to support their contentions with record evidence and the District Court's judgment should be affirmed.

## B.    Plaintiffs Have Abandoned Their Arguments Because They Failed to Present Appropriate Arguments As to Why They Are Entitled to Relief.

Similarly, despite presenting eleven pages of purported "Argument," Plaintiffs' Brief falls woefully short of presenting any convincing argument as applied to the facts in this case. Rather, Plaintiffs provide eleven pages of case law—much of which is not binding on this Court[3]—without even attempting to apply the

---

[3] Throughout their argument, Plaintiffs cite numerous non-binding cases from Courts of Appeal other than the Eleventh Circuit and from various district courts. *See, e.g.*, *Ray v. McCullough Payne & Haan, LLC*, 838 F.3d 1107 (11th Cir. 2016) ("And, of course, district court opinions are not binding on us either."); *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1208 (11th Cir. 1981) ("Under the established federal legal system the decisions of one circuit are not binding on other circuits.").

legal principles to the facts in this case or their arguments on appeal. As such, Plaintiffs have abandoned their claims. *See Kinard v. Gallina*, 714 F. App'x 974, 975 (11th Cir. 2018) (explaining how appellants' argument "contain[ed] only general legal principles," without "attempt[ing] to apply those principles to the allegations in the complaint, nor does it explain why the district court erred in concluding that the complaint failed to state claims upon which relief could be granted," and finding that appellants "have abandoned their claims because they have failed to provide appropriate arguments as to why they are entitled to relief"). The District Court's judgment should therefore be affirmed.

## II.    The District Court Correctly Disregarded Plaintiffs' Arguments Pertaining To An Alleged Hostile Work Environment Because Plaintiffs Did Not Bring A Hostile Work Environment/Harassment Claim.[4]

### A.    A Hostile Work Environment Claim Is a Discrete Claim, Wholly Separate From the Claims That Plaintiffs Brought in the District Court.

To plead a hostile work environment claim under either Title VII or § 1981, Plaintiffs were required to alleged that: (1) they belong to a protected group; (2) they were subjected to unwelcome harassment; (3) the harassment was based on their membership in the protected group; (4) the harassment was severe or pervasive

---

In any event, much of the case law cited by Plaintiffs is irrelevant, as discussed further below.

[4] Although Plaintiffs use both "harassment" and "hostile work environment" in their Brief, they appear to be referring to the same type of claim—that is, an alleged hostile work environment (*i.e.*, harassment) based on their race.

enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010); *see Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002) (explaining that Title VII and § 1981 hostile work environment claims have same elements and are subject to same analytical framework).

It is well-settled that arguments not raised in the district court will not be considered on appeal. *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1342 (11th Cir. 2001); *see Inter'l Aircraft Recovery, L.L.C. v. Unidentified, Wrecked, & Abandoned Aircraft*, 373 F.3d 1147, 1150 n.7 (11th Cir. 2004) ("We also note that IAR argues that Rasmussen did not have authority to reject salvage services on behalf of the Navy. This argument was not raised in the district court and, therefore, we will not address it on appeal."); *Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1283 (11th Cir. 2003) (declining to consider whether constructive discharge was tangible employment action because plaintiff did not assert in district court that she was constructively discharged because of harassment).[5]

---

[5] Although several exceptions to this rule exist, none of those situations are present here. *See Wright*, 270 F.3d at 1342 (outlining exceptions to rule).

13

It is axiomatic that the District Court could not have erred by not permitting Plaintiffs to proceed to trial on a harassment claim when there was not a harassment claim pending. Plaintiffs' Complaint contains no allegations regarding alleged harassment—much less alleged harassment that was severe or pervasive—or an alleged hostile or abusive working environment. *See generally* Doc. 18. Nor did Plaintiffs ever seek to amend their Complaint to assert a hostile work environment claim. *See generally* Docket Sheet; *see Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006) (plaintiff failed to properly plead retaliation based on termination claim because "Federal Rule of Civil Procedure 8(a) requires that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" and plaintiff never amended complaint to allege claim of retaliation based on termination). Indeed, Plaintiffs did not raise the issue of an alleged hostile work environment claim until their Response.[6] Even then, Plaintiffs—who were

---

[6] In his interrogatory responses, James made no references to alleged harassment or an allegedly hostile work environment. *See generally* Doc. 45-1. Similarly, while Ellerbe's interrogatory responses identified two witnesses who were allegedly aware of a "hostile working environment," Doc. 45-3 at 4, this passing reference to an alleged hostile work environment during discovery does not properly assert a claim for such. *See Brown*, 440 F.3d at 1266 (citing *Coon v. Ga. Pac. Corp.*, 829 F.2d 1563, 1568 (11th Cir. 1987)) ("the discussion of a potential claim in a deposition does not satisfy the [pleading] requirements of Rule 8(a)"); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (even liberal pleading standard for *pro se* plaintiff is "inapplicable after discovery has commenced"). Similarly, at their depositions, neither James nor Ellerbe alluded to bringing a hostile work environment claim in this case. *See generally* Docs. 36-1, 36-3. James never mentioned an alleged hostile work environment. *See generally* Doc. 36-3. While

represented by counsel—still did not clearly attempt to raise their hostile work environment claim.[7] Accordingly, the District Court properly declined to consider Plaintiffs' arguments pertaining to an alleged hostile work environment. *See* Doc. 56 at 8–9. Given that those arguments were not properly raised before the District Court, this Court should also decline to consider those arguments on appeal.[8] *See,*

---

Ellerbe testified that she reported "some of the hostile work environment situations" to Westin during her employment, when asked what the nature of her claims were against Westin in this case, Ellerbe responded, "[i]t appears to be racial discrimination and retaliation." Doc. 36-1 at 81:18–24, 173:18–21. Ellerbe's mention of an alleged hostile work environment during her deposition does not constitute proper raising of that claim. *See Brown*, 440 F.3d at 1266 (district court correctly refused to address allegation of retaliation based on termination because although plaintiff discussed claim of retaliation based on termination "extensively" at deposition, he never amended complaint to include claim of retaliation based on termination).

[7] Two of Plaintiffs' three references to alleged harassment in their Response were merely in the section entitled "Response to [Westin's] Statement of 'Facts.'" Doc. 45 at 13–14. The third reference in the argument section of their Response pertains to James' retaliation claim—not a separate harassment claim, and not any claim on behalf of Ellerbe. *See id.* at 20 (arguing James filed grievances regarding alleged harassment and that James *subsequently faced adverse employment actions*, alleging that based on such, "sufficient temporal proximity exists for a jury to conclude that these actions were motivated by *retaliatory* animus") (emphasis added). Similarly, despite merely mentioning an alleged hostile work environment in the section entitled "Response to [Westin's] Statement of 'Facts,'" *id.* at 13, Plaintiffs asserted no argument regarding an alleged hostile work environment claim. *See generally* Doc. 45. Rather, Ellerbe merely claimed in support of her argument that she was constructively discharged as a form of retaliation that she "knew her work environment would only become increasingly hostile . . . ." *Id.* at 26.

[8] Plaintiffs' reliance on *Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276 (11th Cir. 2018), in their Brief in support of their harassment argument is therefore irrelevant. *Smelter* does not stand for the proposition that in this Circuit "one incident with the racial epithet could be sufficient" to maintain a harassment claim as Plaintiffs contend. Brief at 8. Indeed, this Court has held that a single incident of a

*e.g.*, *O'Kelley v. Craig*, 781 F. App'x 888, 898 n.4 (11th Cir. 2019) (declining to address excessive force claim on appeal because such claim was a "discrete claim" not raised in district court below); *Anthony v. Coffee Cnty.*, 579 F. App'x 760, 763–64 (11th Cir. 2014) (declining to consider arguments on appeal regarding allegations that were not in plaintiff's complaint and were instead raised in response to defendants' motion for summary judgment); *Desravines v. Orange Cnty. Sheriff's Office*, 520 F. App'x 946, 948 (11th Cir. 2013) (declining to consider *pro se* appellants' claim under 42 U.S.C. § 1985 because such claim was not raised before district court); *Miller v. King*, 449 F.3d 1149, 1150 n.1 (11th Cir. 2006) (declining to consider appellant's claim under Rehabilitation Action of 1973 because such "claim was never raised in the district court, and thus we do not consider it for the first time on appeal"); *Iraola & Cia, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003) (district court did not err in granting summary judgment to

---

racial slur "does not rise to the level of severity or pervasiveness necessary to raise a Title VII racial harassment claim." *Hall v. DeKalb Cnty. Gov't*, 503 F. App'x 781, 785 (11th Cir. 2013). Rather, *Smelter* dealt with "approximately eight examples of racist remarks" over the course of two months. *Smelter*, 904 F.3d at 1285. The Court explained that it "has held that harassment was pervasive when it occurred at a similar frequency." *Id.* (citing *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) ("roughly fifteen separate instances of harassment over the course of four months" was pervasive)). This is markedly different from the few instances of allegedly inappropriate comments by non-decisionmakers in this case, Doc. 36 at 12–13, which do not come close to equating to severe or a pervasive environment of harassment.

defendant on theory that defendant breached contract by failing to give plaintiff reasonable notice of termination because plaintiff "did not plead a claim for unreasonable termination in its Second Amended Complaint," and district court therefore "properly decided not to allow [plaintiff] to raise a new claim at the summary judgment stage").

### B.   Plaintiffs' Discrimination Claims Should Not Be Liberally Construed As Hostile Work Environment Claims Because Plaintiffs Were Represented by Counsel in District Court.

The Eleventh Circuit liberally construes *pro se* pleadings filed in district court. *See, e.g.*, *Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1192 (11th Cir. 2020) ("Because Harrigan proceeded pro se in the district court, we liberally construe his pleadings."). However, this doctrine is not applicable in this case because Plaintiffs were—at all times, including the filing of their Complaint— represented by counsel in District Court. *See generally* Docket Sheet; *see also* Docs. 1, 18, 45. Accordingly, this Court should *not* liberally construe their discrimination claims to encompass hostile work environment claims. *See Anthony*, 579 F. App'x at 763 (declining to liberally construe plaintiff's complaint to have raised issue that was not raised until response to motion for summary judgment "because [plaintiff] was represented by counsel" in district court); *Alford v. Consol. Gov't of Columbus*, 438 F. App'x 837, 839 (11th Cir. 2011), *cert. denied*, 565 U.S. 1185 (2012) ("Moreover, particularly as Alford was represented by counsel, the district court was

not required to liberally construe the procedural due process claim raised in his Complaint to encompass those allegations raised solely in connection with his distinct substantive due process claim.").

## III.    The District Court Properly Found That Plaintiffs Failed To Demonstrate Discrimination.

### A.    Plaintiffs Failed to Establish Discrimination Under the *McDonnell Douglas* Burden Shifting Analysis.

A plaintiff has the initial burden of demonstrating a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff demonstrates a *prima facie* case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Lewis v. City of Union City*, 918 F.3d 1213, 1221 (11th Cir. 2019). If the defendant meets this burden, the burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason is merely pretext for discrimination. *Id.*

The District Court correctly found that Plaintiffs failed to establish a *prima facie* claim of discrimination. As the District Court explained, "Plaintiffs did not address [Westin's] arguments rebutting their prima facie case in their Response." Doc. 56 at 10. Rather, Plaintiffs jumped straight to their contention that they could survive summary judgment based on a convincing mosaic of circumstantial evidence. *See* Doc. 45 at 15–19. This alone warranted summary judgment with respect to a *prima facie* claim of discrimination. *See Moreland-Richardson v. City*

*of Snellville*, No. 19-14228, 2021 WL 4452523, at *5–6 (11th Cir. Sept. 29, 2021) ("Nevertheless, Plaintiff's termination claim fails at the prima facie stage of the analysis because Plaintiff did not respond below to the City's argument that she was not qualified for the city clerk position at the time of her termination, and she did not object to the Magistrate Judge's determination that she had thus failed to establish this essential element of a prima facie case of discrimination based on her termination."); *Floyd v. Home Depot U.S.A., Inc.*, 274 F. App'x 763, 765 (11th Cir. 2008) ("Floyd failed to respond to Home Depot's argument that he could not state a prima facie case of hostile environment harassment because he could not show that the alleged conduct was severe or pervasive or altered the terms and conditions of his employment. Therefore, . . . he has waived this argument.").

Moreover, the District Court correctly determined that had Plaintiffs attempted to address Westin's arguments against their satisfaction of the *prima facie* standard, they would have failed. A *prima facie* discrimination claim requires sufficient evidence to show that the plaintiff "(1) is a member of a protected racial class; (2) was qualified for the position; (3) experienced an adverse employment action; and (4) was replaced by someone outside of her protected class or received less favorable treatment than an individual outside of her protected class." *Matthews v. City of Mobile, Ala.*, 702 F. App'x 960, 965 (11th Cir. 2017) (citing *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)).

19

Plaintiffs did not produce *any* evidence showing that similarly situated employees outside of their protected class were treated more favorably with respect to the change in the 096 Line rotation metric. Instead, Plaintiffs admitted that the change to the 096 Line rotation metric applied to all sales executive, regardless of race. Doc. 45 at 8; *see also* Doc. 36-2 at ¶ 10. As to Westin's revoking James' front-to-back privileges and not permitting Ellerbe to take tours front-to-back, the record reflects that James was the only sales executive regularly permitted to go front-to-back and that privilege was revoked following a customer's complaints about misrepresentations by James. Doc. 36-2 at ¶¶ 16–17; Doc. 36-3 at 144:6–145:6, 168:25–169:9.[9] Thus, James failed to show that he was qualified to continue the front-to-back privileges and Plaintiffs further failed to show that similarly situated employees outside of their protected class were treated more favorably. Doc. 56 at 12.

With respect to their assertion that Westin fraudulently manipulated their sales numbers, Plaintiffs again produced no evidence to support that assertion. *See generally* Doc. 45; *see* Doc. 56 at 12; *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181

---

[9] Plaintiffs' Brief argues for the first time that another white sales executive, Shonin Corbeil, was permitted to close his own deals. Brief at 12. This is consistent with record evidence that other sales executives were occasionally permitted to do so due to staffing issues, but that these occurrences were one-off and were not a regular practice. Doc. 36-2 at ¶ 16; Doc. 36-3 at 144:6–145:6, 168:25–169:9. Only James had the standing privilege of going front-to-back, until he was disciplined for abusing the privilege for his own benefit. Doc. 36-2 at ¶¶ 16–17.

(11th Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) ("Speculation does not create a genuine issue of fact."). Additionally, Plaintiffs nevertheless admitted that sales associates outside their protected class also occasionally had incorrect numbers on their PMP reports and Plaintiffs failed to demonstrate that they suffered any adverse action with respect to the PMP reports. *See generally* Doc. 45 at 16–26; *see* Doc. 36-3 at 95:13–96:3; Doc. 56 at 12–13, 17–18. Plaintiffs therefore failed to demonstrate a *prima facie* case of discrimination to survive summary judgment.

Furthermore, even if Plaintiffs had demonstrated a *prima facie* case of discrimination, Westin satisfied its burden by articulating legitimate, non-discriminatory reasons for the adverse actions. Specifically, the 096 Line rotation metrics were changed because Sosa wanted to incentivize non-096 Owner Line sales. Doc. 36-2 at ¶ 10. James' front-to-back privileges were revoked because of misrepresentations to a customer. *Id.* at ¶ 17. Ellerbe and other sales executives were not regularly permitted to take tours front-to-back because Westin wanted to eliminate pricing misrepresentation (the very reason that James' front-to-back privileges were revoked). *Id.* at ¶ 16. Finally, any errors on the PMP reports were the result of human error and promptly corrected. *Id.* at ¶¶ 19–20.

Given Plaintiffs' complete failure to address Westin's *prima facie* discrimination argument in their Response, Plaintiffs simply could not have

demonstrated pretext under the burden-shifting analysis. Nevertheless, assuming *arguendo* that Plaintiffs had demonstrated a *prima facie* claim, they still failed to show pretext. For their pretext argument, Plaintiffs primarily relied on alleged temporal proximity. *See* Doc. 45 at 19–20. Plaintiffs also claimed that the misrepresentation by James was not true and that managers were just trying to sabotage his sales. *Id.* at 21–24. Plaintiffs further argued that Westin's given reason for the 096 Line change was questionable because "no one kn[ew] that the change was made," and "the change was reverted by Regis Hollander when [James] brought it to his attention." *Id.* at 25. None of these assertions established pretext.

It is well-established that temporal proximity alone is not sufficient to show pretext. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1138 n.15 (11th Cir. 2020). Additionally, James' claim that managers were trying to "sabotage" his sales was nothing more than a conclusory assertion. *See Lewis v. Blue Bird Corp.*, 835 F. App'x 526, 530 (11th Cir. 2020) ("[t]o establish pretext, the plaintiff cannot merely make conclusory allegations and assertions"). Further, even assuming that James did not make any misrepresentations to customers (as he contends), he still failed to point to evidence calling into question Westin's sincere belief that James had in fact made misrepresentations. *See id.* ("When an employer asserts that it has fired an employee based on reported workplace incidents, the employee must not only dispute that those incidents occurred, but also call into question the employer's

sincere belief that they occurred."); *Smith v. PAPP Clinic, P.A.*, 808 F.2d 1449, 1452–53 (11th Cir. 1987) (employer's honest belief based on information that employee violated policies can constitute legitimate reason for adverse employment action even if employer's belief is wrong or mistaken).

With respect to the earlier-in-time change in criteria to determine 096 Line staffing, James (a) initially maintained his position on the 096 Line even after the change and then (b) despite briefly falling off the line due to a lengthy vacation and another associate's success, quickly regained it based upon his performance. Doc. 36-2 at ¶¶ 12, 14–15. As the District Court noted, "[i]f the true purpose of the metric change was to discriminate, James would not have progressed as he did." Doc. 56 at 14. Plaintiffs therefore failed to demonstrate pretext to overcome summary judgment.

**B.     Plaintiffs Failed to Demonstrate a Convincing Mosaic of Discrimination.**

Given Plaintiffs' failure to establish a *prima facie* claim of discrimination (and, alternatively, their failure to demonstrate pretext), the only way for Plaintiffs to avoid summary judgment on their discrimination claims was to demonstrate "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker.'" *Cooler v. Layne Christensen Co.*, 710 F. App'x 842, 846 (11th Cir. 2017) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). "A plaintiff may establish a convincing

mosaic by pointing to evidence that demonstrates (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Holley v. Ga. Dep't of Corr.*, 845 F. App'x 886, 890–91 (11th Cir. 2021).[10]

Plaintiffs did not establish a convincing mosaic of discrimination. In support of their convincing mosaic argument in the District Court, Plaintiffs pointed to (1) Plaintiffs being the only two black employees on Westin's sales team, (2) other employees' unsubstantiated impressions that issues had racial motivations, (3) alleged comments about "racial tension" and everything becoming "racial," (3) Plaintiffs' own prior written complaints, and (4) another former employee, Anesha Corbett ("Corbett"), allegedly leaving Westin because she thought management was biased toward black people. Doc. 45 at 17–18.[11] Plaintiffs failed, however, to point

---

[10] Plaintiffs' reliance on several cases regarding the lack of a "smoking gun" is irrelevant. *See* Brief at 27. Summary judgment was not granted in this case due to the lack of a "smoking gun." *See generally* Doc. 56.

[11] Westin previously filed in this Court a "Motion to Strike Portions of [Plaintiffs'] Appendix" (the "Motion to Strike")—specifically, the three purported declarations ("Declarations") from non-parties Anesha Corbett, Adam Schiller, and John D'Angelo that were included on pages 19–21 of Plaintiffs' Appendix. Therein Westin stated that these Declarations "were not filed with the District Court," and represented that "neither Westin nor undersigned counsel for Westin have ever seen the Declarations before in any form." Motion to Strike at 4–5. This Court granted Westin's Motion to Strike on December 29, 2022. Thereafter, when Westin was preparing this Brief and its appendix, Westin discovered that although the Declarations were in fact not filed with the District Court, other declarations, with textual content similar to the stricken documents, were filed with the District Court. *See* Doc. 45-9; Doc. 45-10; Doc. 45-11. Westin did not realize the previous

to any evidence suggesting that they being the only two black employees on Westin's sales team was because Westin did not want to employ black people. *See id.* Nor did Plaintiffs produce any evidence suggesting that qualified black candidates applied for positions on the sales team but were rejected for non-legitimate reasons. *See id.*

Additionally, employees' subjective impressions about racial motivations and racial tension do not, without more, give rise to an inference of discrimination. *See Smith*, 644 F.3d at 1325 n.14 ("[A]n inference, is not a suspicion or guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact[.]"). Plaintiffs' prior written complaints reflect solely their subjective allegations—not admissible evidence—and nothing in Corbett's declaration explained why she thought management was biased toward black people. *See generally* Doc. 45-11. As such, Corbett's assertion is simply an unsupported impression that does not give rise to an inference of discrimination to defeat

---

declarations were, as on examination they appear to be, a different version of the newly-filed Declarations. Westin and undersigned counsel apologize to this Court and Plaintiffs for this oversight and any inadvertent confusion. Nevertheless, Westin maintains that this Court's ruling granting the Motion to Strike was correct because it remains that the exact Declarations included in Plaintiffs' Appendix were not filed with the District Court. Moreover, Plaintiffs have suffered and will suffer no prejudice given that versions that were filed with the District Court are included in the record on appeal and, we submit, are immaterial to the resolution of the issues on appeal in either form.

summary judgment. In light of the above, the District Court properly granted summary judgment in favor of Westin on Plaintiffs' discrimination claims.

## IV. The District Court Properly Granted Summary Judgment In Favor Of Westin On Plaintiffs' Retaliation Claims.

### A. Plaintiffs Failed to Respond To Westin's Arguments Regarding Ellerbe's Retaliation Claims, and Failed To Establish That An Adverse Employment Action Was Taken Against Ellerbe.

To successfully state a claim for unlawful retaliation, a plaintiff must first establish a *prima facie* retaliation claim by showing that: (1) he or she engaged in statutorily protected activity by complaining about or opposing unlawful activity; (2) he or she suffered an adverse employment action; and (3) there is some causal connection between the protected activity and the adverse action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). An "adverse employment action," means a "serious and material change in the terms, conditions, or privileges of employment," and generally "requires a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 800 (11th Cir. 2014) (citing *Holland v. Gee*, 677 F.3d 1047, 1056 (11th Cir. 2012); *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001)); *see Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) ("mistreatment based on retaliation for protected conduct—for example, making or supporting a charge of discrimination—is actionable . . . only if

26

the mistreatment 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination'").

Westin argued in its Motion that Ellerbe's retaliation claims failed because she suffered no adverse employment action following any protected activity. Doc. 36 at 24. Specifically, Westin demonstrated that Ellerbe's performance counseling document for not meeting the expected 80% VPG for the 90-day period of September to November of 2019 was promptly revoked once Westin became aware of and corrected a numerical error on the report that had caused Ellerbe's VPG to slip. *Id.* at 10 n.5; Doc. 36-1 at 80:11–25, Doc. 36-2 at ¶ 21. Westin also established that Ellerbe's furlough in March 2020 was due solely to the COVID-19 pandemic, and that Ellerbe thereafter voluntarily chose not to return to work due to her concerns about COVID-19. Doc. 36 at 12; Doc. 36-1 at 156:4–157:11, 159:5–16, Ex. 28.

Plaintiffs completely failed to address these points in their Response. *See generally* Doc. 45; *see Moreland-Richardson*, 2021 WL 4452523, at *5–6 (*prima facie* claim failed where plaintiff failed to respond to defendant's argument as to element for discrimination claim); *Floyd*, 274 F. App'x at 765 (plaintiff waived argument regarding *prima facie* claim of harassment because he failed to respond to defendant's argument). Accordingly, the District Court properly found that Ellerbe had abandoned her retaliation claims with respect to those adverse actions, such that Westin was entitled to summary judgment.

27

Rather than seeking to support the adverse actions she had alleged to have occurred, Plaintiffs' Response instead attempted to raise—for the first time—an argument that Ellerbe had suffered an adverse employment action in the form of constructive discharge. *See* Doc. 45 at 25–26. Plaintiffs never once, prior to their Response, alleged a claim that Ellerbe was constructively discharged or forced to resign. *See generally* Doc. 18. Ellerbe, therefore, did not properly raise a retaliation claim based on alleged constructive discharge. *See* Doc. 56 at 16 n.6; *Brown*, 440 F.3d at 1266 (plaintiff failed to properly plead retaliation based on termination claim because plaintiff never amended complaint to allege claim of retaliation based on termination). Consequently, the District Court properly declined to permit Ellerbe to proceed to trial on such a theory.[12]

---

[12] Even if Ellerbe had properly alleged a retaliation claim based on constructive discharge, it would have failed for the threshold reason that she did not exhaust her administrative remedies. *See* 42 U.S.C. § 2000e-5(b); *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999). Indeed, neither of Ellerbe's charges of discrimination referenced alleged constructive discharge (or even resignation). *See generally* Doc. 36-1 at Ex. 21, 23. Consequently, Ellerbe could not maintain a retaliation claim under Title VII based on constructive discharge. Moreover, at her deposition, Ellerbe admitted that she was not returning to Westin because of "unforeseen circumstances," which were "COVID." Doc. 36-1 at 159:5–16. While Ellerbe later tried to change the reason for her resignation in her Declaration filed in support of Plaintiffs' Response, Doc. 45-4 at ¶ 33, Ellerbe could not create a genuine issue of material fact to defeat summary judgment on her Title VII or § 1981 retaliation claims based upon her prior clear, unambiguous deposition testimony. *See Van T. Junkins & Assocs. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue

**B.    James' Response Failed to Establish the Pretext Required to Maintain a Retaliation Claim.**

Once a plaintiff establishes a *prima facie* retaliation claim, the burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802. If the defendant is able to meet this burden, the burden shifts back to the plaintiff to demonstrate that the proffered legitimate, non-retaliatory reason is merely pretext for retaliation. *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999). Pretext may be shown in various ways, such as showing that: (1) the employer has failed to clearly and consistently articulate the reason for the employee's discharge; (2) the employer has deviated from its own standard procedures; or (3) a similarly situated employee was treated more favorably. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298-99 (11th Cir. 2006); *Walker v. St. Joseph's/Candler Health Sys., Inc.*, 506 F. App'x 886, 889 (11th Cir. 2013). Temporal proximity alone is not sufficient to show pretext. *Gogel*, 967 F.3d at 1138 n.15.

James' pretext argument in support of his retaliation claims was the same as his pretext argument for his discrimination claims, which Westin previously addressed in this brief, and fails for the same reasons. *See supra* Argument § III.A.

---

with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

Accordingly, the District Court correctly granted summary judgment in Westin's favor on this claim and its ruling should be affirmed.

## V. The District Court Correctly Disregarded Plaintiffs' Arguments Pertaining To An Alleged Failure To Promote And Alleged Discriminatory Wages.

### A. Plaintiffs Did Not Bring a Failure to Promote or a Discriminatory Wages Claim.

Plaintiffs face the same issue with their alleged failure to promote and discriminatory wages claims that they do with their alleged hostile work environment claim, namely that such claims are wholly separate and distinct from the discrimination and retaliation claims that Plaintiffs brought in District Court where they were represented by counsel.

"'Failure to promote'" is a discrete discriminatory act. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"). While a truism, in order to pursue a discrimination claim, Plaintiffs were required to properly plead it under Federal Rule of Civil Procedure 8(a)(2). *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.").

Plaintiffs' Complaint in this case is completely devoid of any allegations regarding an alleged failure to promote (or any requested or desired promotion in general). *See generally* Doc. 18. Likewise, there is no mention of alleged discriminatory wages in Plaintiffs' Complaint. *Id.*; *see Brown*, 440 F.3d at 1266. As was true with Plaintiffs' arguments pertaining to an alleged hostile work environment, Plaintiffs did not even arguably raise the issue of alleged failure to promote, or alleged discriminatory wages claim, until the filing of their Response.[13] As such, the District Court correctly decided not to consider Plaintiffs' arguments pertaining to an alleged failure to promote or allegedly discriminatory wages. Doc. 56 at 8 n.4. Given that Plaintiffs failed to properly raise these claims before the District Court, this Court should also decline to consider arguments premised upon them on appeal. *See, e.g.*, *O'Kelley*, 781 F. App'x at 898 n.4; *Anthony*, 579 F. App'x at 763–64; *Iraola*, 325 F.3d at 1286.[14]

---

[13] With respect to alleged discriminatory wages, Plaintiffs merely stated in the "Response to [Westin's] Statement of 'Facts,'" section of their Response: "In fact, Rebecca set in place a system where every deal [James] sold was distributed to management on a rotation blatantly engaging in wage discrimination and making the managers wealthy by paying them [James'] commission and bonus for work they hadn't done," and thereafter purported to provide several other supporting facts. Doc. 45 at 9–10. Similarly, as to an alleged failure to promote, Plaintiffs merely stated in that same section of their Response: "All of this while never promoting [James] to [a] management position even though he did the work of management. . . . . When Westin needed another manager, they outsourced and hired someone (Dan Nicholas[,] a white man) without resort and product knowledge." *Id.* at 9.

[14] Accordingly, the cases that Plaintiffs cite in their Brief pertaining to failure to promote are irrelevant. *See* Brief at 28, 31–36. Further, because Plaintiffs were

**B.**    **Plaintiffs May Not Maintain a Failure to Promote Claim, Nor May James Maintain a Discriminatory Wage Claim Under Title VII Because They Failed to Exhaust Their Administrative Remedies.**

Before a plaintiff may file a judicial complaint for discrimination under Title VII, he or she must first exhaust their administrative remedies by filing a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e-5(b); *Crawford*, 186 F.3d at 1326. A subsequent "judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Stuart v. Jefferson Cnty. Dep't of Human Res.*, 152 F. App'x 798, 801 (11th Cir. 2005) (quoting *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004)). "Judicial claims that 'amplify, clarify, or more clearly focus' the allegations in the EEOC charge are permitted, but the plaintiff cannot allege new acts of discrimination." *Stuart*, 152 F. App'x at 801 (quoting *Gregory*, 355 F.3d at 1279–80).

Nowhere in either James' original or amended charge of discrimination, nor in Ellerbe's original or amended charge of discrimination, is there any mention of an alleged failure to promote. *See generally* Doc. 36-1 at Ex. 21, 23; Doc. 36-3 at Ex. 16–17. Given that failure to promote is a discrete discriminatory act, James'

---

represented by counsel in District Court, their discrimination claims should not be liberally construed to encompassing an alleged failure to promote or allegedly discriminatory wages. *See supra* Argument § II.B.

alleged failure to promote cannot "reasonably be expected to grow out of" his charges of discrimination. *Stuart*, 152 F. App'x at 801.[15]

Moreover, Plaintiffs' arguments pertaining to an alleged failure to promote only appear to concern James. To that end, Ellerbe has waived any argument regarding an alleged failure to promote pertaining to herself. *See Hall v. Great-West Healthcare*, 276 F. App'x 923, 927 (11th Cir. 2008) (quoting *Cont'l Tech. Servs. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991)) (affirming grant of summary judgment to defendant where plaintiffs failed to explain why alleged errors by district court mattered, explaining that "an argument not made is waived," and, therefore, "the employees have waived any argument that the evidentiary rulings precluded the summary judgments in favor of [defendant]").[16]

---

[15] Although the District Court's decision was not based on failure to exhaust administrative remedies, this Court may still affirm the judgment on that basis. *See Thomas*, 506 F.3d at 1364 ("We may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below.").

[16] Although *pro se* filings are held to a "less strict standard" and are thus, "construed liberally," this liberal construction "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Powers v. Avondale Baptist Church*, 393 F. App'x 656, 657 (11th Cir. 2010) (quoting *Alba v. Montford*, 517, F.3d 1249, 1252 (11th Cir. 2008*); GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)). Accordingly, a *pro se* litigant's "failure to brief issues on appeal still amounts to an abandonment of those issues." *Powers v. Avondale Baptist Church*, 393 F. App'x 656, 657 (11th Cir. 2010) (quoting *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008)).

Finally, neither James' original nor amended charge of discrimination alludes to alleged discriminatory wages, *see generally* Doc. 36-3 at Ex. 16–17, and a discriminatory wages claim cannot "reasonably be expected to grow out of" James' charges of discrimination. *Stuart*, 152 F. App'x at 801. James, therefore, could not have raised a discriminatory wages claim in District Court. Consequently, the District Court did not err in granting summary judgment in favor of Westin and disregarding Plaintiffs' arguments pertaining to an alleged failure to promote and alleged discriminatory wages.

## CONCLUSION

For the foregoing reasons, Westin respectfully requests that this Court affirm the District Court's entry of summary judgment in favor of Westin and against Plaintiffs.

Dated: January 4, 2023.

Respectfully submitted,

*/s/Joyce Ackerbaum Cox*
Joyce Ackerbaum Cox, Esq.
Florida Bar No. 0090451
E-Mail: jacox@bakerlaw.com
Erin M. Sales, Esq.
Florida Bar No. 119799
E-mail: esales@bakerlaw.com
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Post Office Box 112
Orlando, Florida 32802-0112
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
**Counsel for Defendant-Appellee Westin St. John Hotel Company, Inc.**

## **CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that, pursuant to Federal Rule of Appellate Procedure 32(g)(1), the foregoing complies with the word limit set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) in that it contains 8,806 words.


*/s/ Joyce Ackerbaum Cox*
Joyce Ackerbaum Cox

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 4, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  I also certify that a true and correct copy of the foregoing is being served on this day on the following *pro se* parties via overnight mail:

Evrett James
Veronica Ellerbe
3883 Carrick Bend Dr.
Kissimmee, Florida 34746
***Plaintiffs-Appellants***

*/s/ Joyce Ackerbaum Cox*
Joyce Ackerbaum Cox